GAST v. NEW YORK ASBESTOS MFG. CO. et al.

(Circuit Court, E. D. New York. November 21, 1900.)

PATENTS—INVENTION—STEAM-PIPE COVERING.

> The Shearer patent, No. 456,661, for a steam-pipe covering, composed of alternate layers of plain and corrugated noncombustible material, the longitudinal air spaces formed by the corrugations being closed at the ends of the section by asbestus or similar material, embodies a combination of elements all of which were old in the art, and none of which perform new functions, either separately or in combination, and, in view of prior patents, is void for lack of invention.

In Equity. Suit for infringement of a patent. On final hearing.

Quincy Ward Boese, for complainant.
Henry Schreiter, for defendants.

THOMAS, District Judge. The complaint states an infringement by the defendants of a patent for steam-pipe covering, secured by letters patent issued to one Shearer, July 28, 1891. The claim is as follows:

"What I claim as my invention, and desire to secure by letters patent, is the following: A detachable pipe-covering section composed of alternate layers of corrugated and plain noncombustible material, whereby longitudinal air spaces are formed throughout the entire length of the section, the ends closed by asbestus or similar material, and having a canvas cover, with means, such as wires, beneath such cover for closing the joint when the section has been placed upon the pipe, all combined substantially as shown and described."

It is conceded that the claim is for a combination device, which admits that the several elements thereof are old, and, indeed, there is no contention to the contrary. The essential features of the covering are (1) a section of alternate layers of corrugated and plain noncombustible material; (2) longitudinal air spaces formed thereby;

(3) the ends of the section closed by asbestus or similar material; (4) an outer canvas cover, with means, such as wires, for closing the longitudinal joint.

The Bradley 1888 patent, improvement in nonconducting covering for steam pipes, boilers, etc., shows two corrugated sheets, with an intermediate wire fabric, corrugated, interposed between two plain sheets, each of which is doubled, with a corrugated wire fabric intervening. The specification states that:

"The coverings consist of a series of nonconducting plain or corrugated sheets, composed of paper, felt, asbestus, or other similar fibrous material, the sheets of the series being all of the same material, or made up of sheets one or more of which are of different material from the others composing the series. The objects of this invention are to increase the durability and materially strengthen such coverings, without destroying the requisite flexibility necessary to enable them to be readily bent and conformed to the surface to which they are to be applied; to stiffen the coverings to a degree sufficient to provide for staying and bracing the sheets of which the coverings are composed, when corrugations in the sheets are of such dimensions that they would otherwise break down, owing to the normal flexibility of the sheets; and to provide one or more layers of a flexible stiffening adapted to retain a variety of forms given to the layers individually or collectively, whereby corrugations may be conveniently made in, or the covering be bent to conform to, a particular configuration in, or locality of, the device to be covered."

The specification, referring to the figure, describes a number of plain sheets composed of paper, felt, asbestus, or other similar fibrous material, and similar sheets forming opposing sides of a covering having one or more intermediate corrugated sheets of similar material. The claims are as follows:

"(1) A covering the outer layers on both sides of which are composed of plain sheets of nonconducting fabric, and the inner layer of corrugated nonconducting fabric, adapted to support and hold in position the outer and plain sheets, substantially as described. (2) A covering the outer layers on both sides of which are composed of plain sheets, one or both of which is lined with wire fabric, and the intermediate layer or layers of one or more corrugated sheets, with or without a lining of wire fabric, substantially as described."

In connection with the specification, claim 1 shows a use of asbestus paper in alternate layers of corrugated and plain sheets, the former to support the latter. Bradley fully describes air spaces formed by alternating layers of corrugated and plain sheets, "possessing to a maximum degree nonconducting qualities and indestructible by fire or heat." There is no suggestion of retaining dead air within the spaces formed, nor any reference to closing the ends.

Riley, in 1889, patented a "nonconducting jacket." This device, in terms, describes "separated dead-air channels and spaces." The specification states that the invention is—

"To provide a nonconducting jacket wherein a series of parallel separated dead-air channels extend longitudinally within the jacket and are formed of corrugated paper; to provide a nonconducting jacket, wherein an inner set and an outer set of parallel separated dead-air channels extend longitudinally to largely increase the efficiency of the structure in preventing the radiation of heat, and prevent the burning or charring of the hair that may be used; to provide a novel external envelope of textile material for binding and retaining a sectional nonconducting jacket on a steam pipe or other radiating surface, which can be buttoned and unbuttoned; to provide a novel external binding envelope of textile fabric having continuously wired opposite edges

for keeping the latter stretched or distended, and producing a smooth surface when the parts are buttoned together," etc.

The specification further describes the figure illustrating the device as follows:

"The numeral, 1, indicates an internal layer or sheet of asbestus or other material prepared, preferably, as a fireproof paper, and adapted to rest directly in contact with a steam pipe, 2, or other radiating surface to be covered and protected. A layer or sheet of paper formed with parallel corrugations, 3, running lengthwise, is arranged around the internal layer or sheet, with the alternate corrugations resting thereupon, while the other alternate corrugations are cemented or otherwise secured to a sheet, 4, of paper, which constitutes a supporting back for the corrugated paper sheet. A course or layer, 5, composed of asbestus and hair felted together, of considerable bulk or thickness, is placed upon the inner corrugated paper sheet, and upon this felted course is an outer sheet, 6, of paper formed with parallel corrugations, 7, running lengthwise and alternately bearing upon the felted course, while the other alternate corrugations are cemented or otherwise secured to a supporting back, 8, composed of paper. The inner corrugated sheet, 3, and the outer corrugated sheet, 6, constitute within the jacket two sets of parallel separated dead-air channels or spaces, which extend longitudinally, the inner set being at the inside of the felted course or layer, 5, and the outer set at the outside of the said course or layer, whereby the jacket, in its capacity to prevent the radiation of heat, is rendered very efficient, desirable, and suitable for the purpose designed. The backing sheets, 4 and 8, serve to support and preserve the corrugated shape of the paper sheets, and prevent the corrugations from being crushed in when binding the jacket upon a steam pipe or other radiating surface. The several layers or sheets described are prepared of substantially equal dimensions to form a jacket section, and they are then bent around the steam pipe or other object, and brought into cylindrical form, in which position the jacket is secured by an external binding envelope, 9, of suitably prepared duck, canvas, cotton cloth, or other textile fabric, suitable for the conditions required."

Thereupon such covering is described. It is obvious, from this specification and the claim which it contains, that the pipe was to be covered by a plain sheet of noncombustible, nonconducting substance, and that the corrugated sheet was placed above it, and, aside from closing the ends, the device was quite similar to the complainant's covering. With the exception of closing the ends, the claims in the Riley patent fully describe the patent in suit, at least to the extent that any matter of difference would not constitute invention. The manner of fastening the outer covering is different, but such difference is quite unimportant. Although Riley refers in his specification to dead-air channels or spaces, there is no statement, in terms, that the ends shall be closed. But the construction of dead-air spaces in the manner described is the very purpose of the Riley patent, and carries the suggestion that each end must or may be suitably closed, either by fitting against some object at the end of the run, or by sealing or covering; and, if the end should be closed, the thought would be spontaneous that the closure should be effected by the use of material similar to that of which the jacket was composed.

The Kelly 1884 nonconducting covering provided for dead-air spaces by corrugating one layer between two plain layers of nonconducting paper. The manner of making the corrugations was quite different from that employed by the Shearer patent, and there

is no provision, in terms, for closing the ends, although it is inferable that the device for dead-air spaces would not permit of a circulation of air through such spaces.

The Watson 1887 patent, covering for steam pipes, aimed "to provide a covering which shall be fireproof, waterproof, and a nonconductor of heat; and to this end it consists, essentially, in a covering composed of an inner layer of fireproof deafening felt, a second layer of either plain or corrugated deafening felt, and an external layer or covering of waterproof or sized paper." The specification describes "the inner layer, composed of what is known in the trade as 'fireproof deafening felt,' consisting of paper or woolen fiber treated with fireproof compound or asbestos, suitably prepared in sheet form; * * * the second or intermediate layer consisting of what is generally known in the art as 'deafening felt,'—a thick felt composed of suitable fiber, having wool, asbestos, or similar material incorporated therein." It is further stated: "I propose to make use of this material either in the form of plain flat sheets, or in sheets which have been corrugated, the latter being preferred, for the reason that it produces internal spaces between the layers." And the claim is: "The herein-described boiler covering, consisting of the inner layer of fireproof felt, the outer layer of waterproof paper, and the intermediate layer of corrugated waterproof paper." Here is a fireproof noncombustible covering, longitudinal air spaces, and asbestos, specially mentioned as the proper substance with which to treat the layers of which the covering is composed. There is no provision for closing the ends, nor is there an outer envelope corresponding to that described in the Shearer letters.

The Pierce 1883 covering for steam pipes has for its object, as the specification states, to give the covering "a maximum power to resist the passage of heat through it by utilizing, in connection with the covering, confined air, a well-known and efficient nonconductor of heat, by providing the covering with cellular or dead-air spaces between two or more of its layers; and to this end my invention consists in indenting or corrugating the inner surface of one or more of the sheets forming a layer of the covering, as hereinafter more fully described, and shown in the accompanying drawings." This invention aims at space for noncirculating or dead air. The covering is composed of "layers of nonconducting material, one or more of said layers being provided with corrugations or indentations in its surface adjacent the next layer." There is no provision for closing the ends, and an outer covering, with means of attachment, is absent.

The Martin 1881 patent, covering for steam pipes, states: "I have found the most advantageous covering to consist in the use of loose fiber of asbestos, because with it I obtain absolute indestructibility by carbonization, with approximately the greatest amount of air space." The specification discusses the usefulness of confined air as a nonconductor of heat. The covering differs from others described, in that it consists of a "coil of alternate sheet and loose asbestos or similar material in fiber." The intention thereby is to create air spaces, and the air is contained in the

following manner: "The ends of the pipe, as well as the inner and outer ends of the coiled roll, may be securely closed by any suitable cement or adhesive material, such as silicate of soda."

The Suhr 1885 sectional nonconductive covering for tubes provides for a covering made in sections, and the claims are as follows:

"(1) A tube covering formed of two semicylinders of plaster of Paris, asbestus, and sawdust, covered on the outside with a layer of felt, which, in turn, is covered by a layer of thick paper, substantially as herein shown and described. (2) In a tube covering, the combination, with two semicylinders, A, composed of plaster of Paris, asbestus, and sawdust, of the felt, B, on the outside of the same, the paper, C, on the felt, and the piece of canvas, D, or other flexible material, to which the two semicylinders are secured, substantially as herein shown and described."

The specification states:

"To apply a section, the two semicylinders are swung from each other, and passed over the pipe or tube, and then closed and swung together, thereby surrounding the tube or pipe completely. The overlapping part of the canvas covering is then folded against and cemented to the outer surface of the complete covering, thus locking the covering, and holding it in place."

In the letters issued to him Shearer states:

"I am aware that pipe coverings or jackets made of layers of paper or some other nonconducting material having perforations, or short grooves, have been heretofore used, and I do not claim the same as my invention, but I am not aware that any pipe covering made of material which is at once noncombustible and nonconducting, and of alternating plain and fluted layers, whereby longitudinal air spaces are formed throughout the entire length of the section, the section also sealed at the ends and covered on the outside, has ever been known or used."

It is obvious, from an examination of the descriptions of former devices, that pipe coverings of noncombustible and nonconducting material, and of alternating plain and fluted layers, whereby longitudinal air spaces are formed throughout the entire length of the section, were old in the art, and, as we have seen in the Martin patent, the ends were closed, although the construction of the air cells in the Martin device was dissimilar. But in certain other letters patent, prior to that in suit, it is stated that continuous longitudinal dead-air spaces were to be formed. But dead-air spaces can only be formed by making dead-air cells, which necessarily carries or suggests the idea of closing the ends. Shearer provides for closing the ends by "asbestus or similar material." Martin provides for closing the ends by "any suitable cement or adhesive material, such as silicate of soda." Thus, every part of the Shearer device is old. Dead-air cells had been made in practically the same way, so far as concerns the manner of fashioning the same and the material used, but no definite provision has been made for retaining air in spaces by closing the ends, save in the Martin patent. If it was invention to add to a device for forming dead-air cells, substantially similar to those described by Shearer, a provision for closing the same by an application of some material like asbestus, then Shearer produced a patentable combination. But the Shearer device does not indicate invention, unless invention may be found in judicious selection of well-known parts, and the combination thereof, each part by itself, and all the parts in combination, performing old func-

tions. The vital thing is the retention of air in closed cells formed by alternating corrugated and plain layers of nonconducting and noncombustible material, and sealed at the end with similar material. In the Shearer patent the air is contained in cells, in form and manner of construction substantially similar to those shown in one or more previous patents; the material is practically similar; so is the outer covering. To aid the retention of the air, the ends are closed. The closing of ends of spaces intended to hold dead air is an apparent requisite. It does not involve invention, nor even considerable mechanical skill. Previous letters patent, save those of Martin, did not provide means for closing the ends, for the probable reason that the ends would come in contact with some objects at the end of the run, like joints or fittings, that would of themselves tend to close the end of the pipe, or, as the testimony shows, molded coverings were furnished, or the ends of the covering were tapered down with cement. In any case, Shearer's use of old forms has produced air cells substantially as they have been formed before, and he has closed up the ends with a nonconducting, noncombustible material, just as Martin did before him. The dead-air cells employed by Shearer may be better than those fashioned by Martin, and Shearer's method of closing the end may be preferred, but the attainment required very feeble inventive faculty. Every desirable, or even clever, mechanical arrangement does not reach the point of invention. What action or mode of action is there present in his device that was not present before? No part does something in a new way. The combination effects nothing that previous combinations had not effected, with perhaps a less degree of excellence. To ascribe invention to Shearer's efforts is to diminish unduly the products of the inventive faculty intended to be fostered by the statute. This conclusion is reached upon the theory that the claim of Shearer intends to close the ends of the run of pipe covering, and not to close the ends of each section of pipe covering, which last is the apparent reading of the claim. It is urged by the complainant that it was not the intention, and is not the practice, to close the ends of each section, and for the purposes of this decision that contention may be allowed. If the claim demands that the ends of each section shall be closed, then the evidence does not show infringement. But it is considered that the evidence does preponderatingly show infringement. It is conceded that the covering used by the defendants is identical with the complainant's covering, save that, as the defendants claim, they do not close the ends of the covering. In fact, the evidence is that the defendants have on occasions closed the ends of the run in such manner as would infringe the complainant's patent were the patent valid. But the foregoing views deny invention, and hence patentability, to the complainant's covering, from which it results that there must be a decree dismissing the complaint, with costs.